UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeremiah O.A.N., | Case No. 19-cv-1076 (DSD/DTS) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| William P. Barr, *Attorney General;* Secretary, Department of Homeland Security; Acting Director, Immigration and Customs Enforcement; Peter Berg, *Director, St. Paul Field Office, Immigration and Customs Enforcement*, | |
| Respondents. | |

Jeremiah O.A.N., No. 028-127-749, c/o (ICE) Freeborn County Jail, 411 South Broadway Ave., P.O. Box 170, Albert Lea, MN 56007, *Pro Se* Petitioner

Ana H. Voss and Ann M. Bildtsen, Assistant U.S. Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota, 55415, for Respondents

Jeremiah N. has been back in continuous immigration detention for over 22 months under a variety of statuses – first under a 2016 removal order, then under a BIA stay of removal, then back in pre-removal proceedings during the past 12 months. He filed this habeas petition seeking immediate release from custody, asserting that his prolonged detention is unconstitutional. For the reasons stated below, the Court recommends that his petition be granted in part and denied in part and that a bond hearing be held no later than December 24, 2019 to determine whether continued

1

detention is necessary based on an individualized determination that he is a flight risk or a danger to the community.

## FINDINGS OF FACT

Jeremiah N. was admitted to the United States as a refugee in 1997 when he was two-and-a-half years old and adjusted his status to lawful permanent resident in 2006. McPherson Decl. Ex. 1 at 1, 3, Docket No. 6-1. Jeremiah N.'s citizenship is not clear in the record. His habeas petition says he is a native of Sudan and citizen of Ethiopia. Petition ¶ 1, Docket No. 1. Records submitted by the Government say the opposite. *See, e.g.,* McPherson Decl. Ex. 1 at 3 (Notice to Appear), Ex. 2 at 2 (Record of Deportable/Inadmissible Alien), Docket Nos. 6-1, 6-2. But the Immigration Judge's (IJ) November 23, 2018 Order granting his motion to reopen immigration proceedings says he is a "native of Sudan." *Id.* Ex. 10 at 2, Docket No. 6-10. That Order also "acknowledges the possibility that [he] is stateless because of Sudan and South Sudan's unilateral and automatic decisions to revoke and extend citizenship to individuals." *Id.* at 4 n.2. The IJ stated that Jeremiah N. did not present evidence of his citizenship, or lack thereof, for either country and, [f]urthermore, either country may decline to accept [him] if he is not a citizen, if he is ordered removed." *Id.*

In 2013 he pleaded guilty to receiving stolen property. McPherson Decl. ¶ 5, Ex. 3, Docket Nos. 6, 6-3. A stay of imposition for two years was imposed as a sentence. *Id.* In 2014 he violated probation and served 90 days of an amended sentence of one year, with the remaining 275 days stayed for two years. *Id.* On February 25, 2016 he pleaded guilty to third-degree sale of drugs and was placed on probation for 20 years; and fifth-degree possession of drugs and received a stay of adjudication for this offense. *Id.* ¶¶ 6-

7, Exs. 4-5, Docket Nos. 6, 6-4, 6-5. The following day, he "was encountered by ICE at the Blue Earth County Jail," was issued a Notice to Appear for removal proceedings at an unnamed date and time due to his criminal convictions, and was detained. *Id.* ¶ 8, Ex. 1, Docket Nos. 6, 6-1.

On March 10, 2016, an IJ ordered him removed to South Sudan or, in the alternative, Ethiopia. *Id.* Ex. 6, Docket No. 6-6. He waived an appeal. *Id.* He was then detained for three months before ICE released him from custody under an Order of Supervision on June 8, 2016. *Id.* ¶ 11, Ex. 7 (Release Notification), Docket Nos. 6, 6-7.

Nineteen months later, on January 3, 2018, "ICE encountered [Jeremiah N.] at the Mower County Jail" and on January 5, 2018 took him back into custody to effectuate his removal to South Sudan. *Id.* ¶ 12. On February 27, 2018 he moved to reopen his removal proceedings based on changed country conditions in South Sudan and to stay his removal. *Id.* ¶ 13, Ex. 6, Docket Nos. 6, 6-8. The following day the IJ denied his motion to reopen and to stay his removal. *Id.* ¶ 14, Ex. 6. On March 8, 2018 he appealed to the Board of Immigration Appeals (BIA), and on March 27, 2018 the BIA granted a stay of removal pending his appeal. *Id.* ¶ 15. The BIA reversed the IJ's decision on October 22, 2018 and remanded to the IJ to reconsider his motion to reopen. *Id.* ¶ 16, Ex. 9, Docket Nos. 6, 6-9.

The IJ granted Jeremiah N.'s motion to reopen on November 23, 2018. *Id.* ¶ 17, Ex. 10, Docket Nos. 6, 6-10. Five months later, on April 19, 2019, he filed this habeas petition challenging his prolonged detention. Petition, Docket No. 1. He is currently detained at the Freeborn County Jail in Albert Lea, Minnesota. *Id.* ¶ 6.

The IJ held a hearing on April 29, 2019, and on May 15, 2019 the IJ denied Jeremiah N.'s application for asylum, for withholding of removal, and for deferral of removal under the Convention Against Torture regarding South Sudan, Sudan, and Ethiopia; and ordered his removal to South Sudan, to Ethiopia in the alternative, and to Sudan in the second alternative. Voss Decl. ¶ 3, Ex. 11 at 16, Docket Nos. 13, 17. He appealed to the BIA on June 3, 2019. *Id.* ¶ 4, Ex. 12, Docket Nos. 13, 17-1. On October 25, 2019 the BIA remanded the case. BIA Decision, Docket No. 19. The BIA stated that Jeremiah N. "remains ineligible as a matter of law for asylum" but remanded with instructions to the IJ to consider his "eligibility for withholding of removal, including, but not limited to, determining whether [he] has been convicted of a particularly serious crime under the analytical framework of *Matter of N-A-M-,* 24 I&N Dec. 336 (BIA 2007), and *Matter of Frentescu*, 18 I&N Dec. 244 (BIA 1982), as opposed to the drug trafficking based analysis relied upon by the Immigration Judge in accordance with *Matter of Y-L-* and whether [he] has other disqualifying convictions." *Id.* at 4. The BIA further stated that, in "light of this disposition, we will not address at this time [his] application for deferral of removal." *Id.*

In sum, ICE could have, but did not, remove Jeremiah N. during the 2-year period from March 10, 2016 to March 27, 2018 during which he was subject to an actionable final removal order (i.e., between the date of the removal order and the date of the BIA's stay of removal). Indeed, Jeremiah N. was back in immigration custody on January 5, 2018, two-and-a-half-months before the BIA issued the stay. The stay was in effect for approximately 8 months, until the IJ granted Jeremiah N.'s motion to reopen his removal proceedings on November 23, 2018. At that point his status reverted to pre-

removal-order detention and has been such for the past 12 months. The removal proceedings do not appear anywhere close to conclusion, given the BIA's recent remand of the case to the IJ. Jeremiah N. has now been in continuous immigration detention for over 22 months.

## CONCLUSIONS OF LAW

Detention during removal proceedings is mandatory for certain aliens who have committed specified crimes. 8 U.S.C. § 1226(c). Unlike non-criminal aliens, individuals detained pursuant to § 1226(c) may not be released, except in narrow circumstances that are inapplicable here. *See id.* § 1226(c)(2). However, on habeas review under 28 U.S.C. § 2241, the federal district courts have jurisdiction to decide whether an alien's prolonged detention violates the due process clause of the Fifth Amendment to the U.S. Constitution. *See Bah v. Cangemi*, 489 F.Supp.2d 905, 914 n.9 (D. Minn. 2007).

Once a final removal order is issued, ICE has separate statutory authority to detain individuals to ensure they are removed. Under 8 U.S.C. § 1231(a)(2), the Attorney General *shall* detain an alien during the 90-day removal period following a final order of removal and *may* thereafter continue to detain an individual removable under § 1227(a)(2) if the Attorney General determines the alien is a risk to the community. 8 U.S.C. § 1231(a)(6). An order for removal becomes final when the alien either declines to appeal to the BIA or when his appeal to the BIA is unsuccessful. 8 U.S.C. § 1101(a)(47)(B); 8 C.F.R. §§1241.1. The constitutionality of this post-removal-order period of detention is governed by *Zadvydas v. Davis,* 533 U.S. 678 (2001).

Jeremiah N. has been in continuous immigration detention for over 22 months and in pre-removal-order detention under § 1226 for the past 12 months. He is not

5

currently subject to an actionable final removal order. Therefore, his detention is governed by § 1226(c). During the period before a removal order is administratively final, "the Government may constitutionally detain deportable aliens during the limited [time] necessary for their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 527-28, 558–59 (2003).

The Supreme Court in *Demore* emphasized the brief and limited time period of pre-removal-order detention under §1226(c):

> In sum, the detention at stake under §1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal.

*Demore*, 538 U.S. at 530; *see also Omar M. v. Barr*, No. 18-cv-2646, 2019 WL 2755937, at *1 (D. Minn. July 2, 2019) ("the Supreme Court limited its *Demore* holding to a brief period of detention under §1226(c)"); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, 376 F.Supp.3d 950, 956 (D. Minn. 2018) ("The cases applying *Demore* have focused on the critical assumption that detention under §1226(c) would typically be brief to find that prolonged detention – whether or not indefinite – was unconstitutional."); *Bah*, 489 F.Supp.2d at 919 (noting "*Demore's* repeated references to the brief and finite duration of § 1226 detention").

Courts in this District have concluded that due process challenges to the length of detention under §1226(c) must be resolved by examining the facts of the case to determine whether the detention is reasonable. *See, e.g., Omar M.*, 2019 WL 2755937, at * 1; *Muse v. Sessions*, No. 18-cv-54, 2019 WL 4466052, at *3 (D. Minn. Sept. 18, 2018). Courts consider several factors to determine when continued detention becomes unreasonable and thus unconstitutional unless a bond hearing is held to consider

whether he is a danger to the community or likely to flee. *Muse*, 2019 WL 4466052 at *3. These factors include (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the Government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Id.*[1]

First, the Court considers the length of detention, which is "critical to the due-process inquiry." *See id.* at *4. Jeremiah N. has been detained for over 22 months – the first 2-and-a-half months under § 1231 post-removal-order detention, the next 8 months under the BIA's stay of removal, then the last 12 months in § 1226(c) pre-removal-order detention. The total time of detention is about four times longer that the time period discussed in *Demore*. The length of Jeremiah N.'s detention favors granting him a bond hearing. *See, e.g., id.* (14 months); *Mohamed*, 376 F.Supp.3d at 951 (15 months); *Omar M.*, 2019 WL 2755937, at *1 (nearly two years); *Jamal A. v. Whitaker*, 358 F.Supp.3d 853, 856 (D. Minn. 2019) (19 months).

Second, the Court considers how long the detention is likely to continue, taking into account the "anticipated duration of all removal proceedings, including administrative and judicial appeals." *Muse*, 2019 WL 4466052, at *5. This factor strongly favors Jeremiah N. The BIA recently remanded his case to the IJ with directions to consider his eligibility for withholding of removal and whether he has other disqualifying

---

[1] Courts in this District have reiterated that these factors represent a reasonable framework for balancing the due process interests at stake, even though they originally appeared in a decision that was later withdrawn by the First Circuit. *See Omar M.*, 2019 WL 2755937, at *2 (citing cases).

7

criminal convictions. Oct. 25, 2019 Order at 4, Docket No. 19. In light of its remand, the BIA declined to address "at this time" Jeremiah N.'s application for deferral of removal. *Id.* Given the recognized backlog of cases in immigration courts, it is reasonable to believe it could take several more months for the IJ to consider and decide the issues as instructed by the BIA. *See Jamal,* 358 F.Supp.3d at 859 (stating "immigration courts have been struggling to keep pace with the high volume of removal proceedings" and noting backlog of 800,000 removal cases). It is also reasonable to anticipate that the IJ's decision, whenever it comes, will be appealed to the BIA by whichever party did not prevail and that it will take several more months for the BIA to issue a decision. Finally, it is likely that, whenever the decision in the immigration proceedings becomes administratively final, a petition for review to the Eighth Circuit will be filed. Jeremiah N.'s removal is far from imminent.

Third, the Court considers the conditions of the detention. *Muse*, 2019 WL 4466052, at *5. Jeremiah N. is detained at the Freeborn County Jail, which is "not meaningfully different from a penal institution for criminal detention." *Jamal,* 358 F.Supp.3d at 860 (finding immigration detention at Sherburne County Jail "indistinguishable from penal confinement"). The more the conditions of detention resemble penal confinement, the stronger the argument in favor of a bond hearing. *Id.* This factor supports Jeremiah N.

Fourth, the Court considers the nature and extent of any delays in the removal proceedings caused by Jeremiah N. *Muse*, 2019 WL 4466052, at *5. This factor weighs

in Jeremiah N.'s favor because he has not engaged in dilatory tactics.[2]

Fifth, the Court considers the nature and extent of any delays in the removal proceedings caused by the Government. *Id.* at *6. This factor favors the Government because it has not engaged in dilatory tactics.

Sixth, the Court considers the likelihood that the removal proceedings will result in a final removal order. *Id.* This factor favors neither party because they have not presented information about the merits of Jeremiah N.'s immigration case and thus the Court has no basis to determine whether he ultimately is likely to be removed.

The above factors favor granting relief to Jeremiah N. The Court thus finds that continuing to detain him without a bond hearing violates his rights under the Due Process Clause.

## RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT Jeremiah N.'s Petition for a Writ of Habeas Corpus [Docket No. 1] be GRANTED IN PART and DENIED IN PART as follows:

1.      That on or before December 24, 2019, an Immigration Judge must hold a bond hearing and make an individualized determination regarding whether Jeremiah

---

[2] Though the Government suggests delay by Jeremiah N., stating that the "IJ questioned in her decision why [he] had waited until February 2018, only after ICE was preparing to effect his removal, to file his motion to reopen based upon country conditions that appeared to have been in place for some time before." Gov't Br. 4, Docket No. 5. The Government fails to mention that the BIA rejected the IJ's "delay" analysis with respect to changed country conditions. BIA Decision, Docket No. 6-9. Nor does the Government specifically address why it did not remove Jeremiah during the 2-year period in which he was subject to a final order of removal to "South Sudan or in the alternative to Ethiopia." Mar. 10, 2016 Removal Order, Docket No 6-6.

N.'s continued detention is necessary to protect the community or to prevent him from fleeing during the pendency of immigration proceedings;

    2.    That Jeremiah N.'s request for immediate release be denied.

Dated: November 26, 2019

                                                s/David T. Schultz
                                                DAVID T. SCHULTZ
                                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).